**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| GLENN IHDE, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:15-CV-00585-CAN |
| | § | |
| v. | § | |
| | § | |
| HME, INC., | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM ORDER AND OPINION

Pending before the Court are Defendant HME, Inc.'s ("Defendant") Supplemental Motion to Strike and Exclude Testimony of Plaintiff's Expert Kerri Olsen [Dkt. 41] and Motion to Strike and Exclude Rebuttal Testimony of Plaintiff's Expert Kerri Olsen [Dkt. 48] (collectively the "Motions"). On April 12, 2017, the undersigned conducted a hearing and heard oral argument from both Plaintiff Glenn Ihde ("Plaintiff") and Defendant on the Motions [Dkt. 58]. After considering the Motions, all relevant filings and evidence, as well as the oral argument of counsel at hearing, the Court finds that Defendant's Supplemental Motion to Strike and Exclude Testimony of Plaintiff's Expert Kerri Olsen [Dkt. 41] is **DENIED**, and that Defendant's Motion to Strike and Exclude Rebuttal Testimony of Plaintiff's Expert Kerri Olsen [Dkt. 48] is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Plaintiff filed the instant lawsuit seeking damages for breach of contract, quantum meruit recovery of the market value of services rendered, and attorneys' fees and costs [Dkts. 1; 31]. Plaintiff's claims arise out of Defendant's alleged failure to pay Plaintiff for "steel detailing services" he provided. Defendant is alleged to have caused significant delays throughout the

project and often changed deadlines: Plaintiff in essence alleges that performance under the contract became a moving target. Plaintiff asserts Defendant paid only $28,710.00 of Plaintiff's first bill (for $31,300.00) and has yet to pay Plaintiff's second bill (for $27,710.00). Plaintiff claims $126,280.00 remains unpaid.[1] Plaintiff proffers Kerri Olsen's expert report (the "Olsen Expert Report") [Dkt. 41, Ex. A] in support of his allegations that Plaintiff substantially performed under the contract and the value of Plaintiff's services. Plaintiff also proffers Olsen's rebuttal report ("Rebuttal Report") [Dkt. 48, Ex. A] (collectively, "Olsen's Reports") directed at each of Defendant's seven experts, namely Lyle Charles, Don Grigg, Bobbi Fletchall, Dan Canda, Brian Aubert, Kevin Rake, and John Haas.

Defendant moved to strike Olsen's Expert Report on December 12, 2016 [Dkt. 41] ("Motion to Strike Expert Report"). Plaintiff filed a Response on December 22, 2016 [Dkt. 44], and Defendant a reply on March 31, 2017 [Dkt. 52].

On February 16, 2017, Defendant also moved to strike Olsen's Rebuttal Report [Dkt. 48] ("Motion to Strike Rebuttal Report"). Plaintiff filed a Response on March 6, 2017 [Dkt. 51], and on March 13, 2017, Defendant filed a Reply [Dkt. 52]. Thereafter, on March 31, 2017, Plaintiff filed a Surreply [Dkt. 55].

On March 30, 2017, Defendant requested a hearing on the Motions [*see* Dkt. 53]. The Court held the hearing ("Hearing") on April 12, 2017, at which each Party proffered additional arguments and/or evidence [Dkt. 58].[2] Olsen testified at Hearing regarding her methodology in compiling the Expert Report and Rebuttal Report.

---

[1] Plaintiff amended his Complaint to add a claim for $5,850.00 related to a separate project. This added claim has no bearing on the Court's analysis herein.

[2] Specifically, Plaintiff proffered a binder containing copies of the materials Olsen considered in compiling her Expert Report, which Plaintiff also timely provided to Defendant alongside Olsen's Expert Report [Dkt. 58, Plaintiff's Exs. 1-2], and Defendant proffered indices to its motion and case law binders that Defendant provided to the Court at Hearing [Dkt. 58, Ex. 1].

Defendant seeks to strike each of Olsen's Expert Report and her Rebuttal Report in their entirety as well as any testimony she may give at trial, arguing the Reports do not comply with Federal Rule of Civil Procedure 26 and that, even if they did, the Court should strike the Reports because Olsen's opinions do not pass muster under Federal Rule of Evidence 702. Defendant argues Olsen's Reports and potential testimony lack basis in evidence, are conclusory and speculative, and provide no rationale based on any identifiable methodology. Defendant also asserts the evidence on which Olsen does rely, namely three depositions, does not support her conclusions, and that she improperly attempts to opine as to subjects for which she has no expertise. Plaintiff contends in response that Olsen bases her reports and potential testimony on her review of the contract documents produced. Plaintiff further asserts Olsen's curriculum vitae demonstrates her qualifications to opine on questions of document control and/or project management in steel detailing and fabricating cases, given her years of experience and scholarship in those fields. Plaintiff claims Olsen's Reports suffice to permit her to opine as to (1) whether Plaintiff substantially performed under the contracts at issue and (2) the value of Plaintiff's services as rendered. Defendant counters that, even if Olsen's Reports were limited to these two issues, Olsen still fails to sufficiently connect the dots between her purported methodology, the facts, and her conclusions.

## LEGAL STANDARD

The Federal Rules of Civil Procedure set forth the procedures litigants must follow in designating expert witnesses. Rule 26(a)(2)(B) provides in pertinent part:

> *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case . . . The report must contain:
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

In the Fifth Circuit, an expert report must be "detailed and complete" when submitted under Rule 26(a)(2)(B) to "avoid the disclosure of 'sketchy and vague' expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). Expert reports that do not provide the basis and reasons for the stated opinions, or that refer to the basis for the opinions only in vague terms, are insufficient under Rule 26(a)(2)(B). *See id.* "To satisfy Federal Rule of Civil Procedure 26(a)(2)(B), the report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." *Hilt v. SFC Inc.*, 170 F.R.D. 182, 185 (D. Kan. 1997), *cited favorably in Broxterman v. State Farm Lloyds*, No. 4:14-CV-661, 2015 WL 11072132, at *2 (E.D. Tex. Oct. 19, 2015) (Mazzant, J.). This requirement allows parties to prepare effectively for cross examination of expert witnesses and, if necessary, to arrange for testimony by additional expert witnesses. FED. R. CIV. P. 26(a)(2)(B) advisory committee's note to 1993 amendments.

Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or harmless." *See Torres v. City of San Antonio*, No. SA:14-CV-555-DAE, 2014 WL 7339122, at *1 (W.D. Tex. Dec. 23, 2014). Indeed, the "sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Id. But see* FED. R. CIV. P. 37(c)(1) (providing the district court authority to order alternative sanctions

in addition to or instead of exclusion, such as costs or attorney's fees). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Id.* When evaluating whether a violation of Rule 26 is harmless for purposes of Rule 37(c)(1), the court looks to four factors: (1) the explanation for the failure to disclose; (2) the importance of the testimony or evidence; (3) potential prejudice to the opposing party in allowing the testimony or evidence; and (4) the possibility of a continuance to cure such prejudice. *Id.*; *see also Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004). In conducting this analysis, the Court remains mindful that Rule 26 exists "to prevent unfair surprise at trial and to permit the opposing party to prepare for rebuttal reports, to depose the expert in advance of trial, and to prepare for cross-examination." *Payne v. Brayton*, No. 4:15-CV-809, 2017 WL 194210, at *3 (E.D. Tex. Jan. 18, 2017).

Even if a Court determines an expert's report meets the Rule 26(a) requirements, the Court has an obligation to act as "gatekeeper" to ensure testimony from a qualified expert is both reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). The proponent must establish relevance, by "demonstrat[ing] that the expert's reasoning or methodology can be properly applied to the facts in issue[,]" and reliability, by showing the "expert opinion . . . [is] more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The proponent must make this showing by preponderance of the evidence. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). A "lack of reliable support may render [expert opinion] more prejudicial than probative" in certain circumstances. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (citing *Barrel of Fun, Inc. v. State Farm Fire & Cas. Co.*, 739 F.2d 1028, 1035 (5th Cir. 1984)). Importantly, however, the Court shall not judge the expert's credibility, as

"the trial court's role as gatekeeper is not intended to serve as a replacement for the adversarial system." *United States v. 14.38 Acres of Land Situated in Leflore Cty.*, 80 F.3d 1074, 1078 (5th Cir. 1996). But a court must determine a witness "is qualified as an expert by knowledge, skill, experience, training, or education" as to the areas for which the party proffers the expert's testimony. FED. R. EVID. 702.

## ANALYSIS

Defendant objects to each of Olsen's Expert Report [Dkt. 41, Ex. 2] and her Rebuttal Report [Dkt.48, Ex. 1]. Defendant challenges the Expert Report (1) for failure to comply with Rule 26(a) requirements and (2) for failure to comply with the federal evidentiary requirement of reliability [Dkt. 41]. Defendant challenges the Rebuttal Report for failure to comply with federal evidentiary requirement of reliability and, in some instances, of qualification [Dkt. 48]. The Court first addresses Defendant's objection to Olsen's Expert Report.

### I.      *Expert Report*

Defendant urges the Court to strike Olsen's Expert Report in its entirety [Dkt. 41], arguing the Expert Report does not comply with Federal Rule of Civil Procedure 26 and that, even if it did, Olsen's methodology remains suspect.

#### A.      *Federal Rule of Civil Procedure 26(a)(2)(B)*

As noted *supra*, a Court must examine an expert report for compliance with Rule 26(a)(2)(B), which requires that the expert provide six specific pieces of information: (1) "a complete statement of all opinions the witness will express and the basis and reasons for them"; (2) "the facts or data considered by the witness in forming them"; (3) "any exhibits that will be used to summarize or support them"; (4) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; (5) "a list of all other cases in which, during the

previous 4 years, the witness testified as an expert at trial or by deposition"; and (6) "a statement of the compensation to be paid for the study and testimony in the case." FED. R. CIV. P. 26(a)(2)(B).[3]  To the extent Defendant challenges the Expert Report for failure to comply with Rule 26(a)(2)(B)'s basic form requirements, the Court finds Olsen's Expert Report meets the basic Rule 26(a)(2)(B) form requirements [*see* Dkt. 42, Ex. A].  Olsen provides a complete statement on the first page of the Expert Report regarding her opinions on the value of the services Plaintiff rendered, as well as the extent to which Plaintiff performed.  She also explains on the same page that she reviewed "the Plaintiff's Original Complaint" and "the documents provided for review" in reaching her conclusion about the value and the extent of services rendered and continues for eleven additional pages to discuss how she reaches these conclusions.  *See* FED. R. CIV. P. 26(a)(2)(B)(i)-(ii).  In addition, Plaintiff provided copies at Hearing of the documents on which Olsen relied [Dkt. 58, Plaintiff's Exs. 1-2] and Olsen's curriculum vitae [Dkt. 44 at 7-10], each of which provides information regarding Olsen's qualifications, her recent publications and employment as an expert, and Plaintiff's employment of her for the instant case.  *See* FED. R. CIV. P. 26(a)(2)(B)(iv)-(vi).  Plaintiff's proffer included the contract documents Olsen examined, as well as the schematics for the project Defendant contracted with Plaintiff to help create.  *See* FED. R. CIV. P. 26(a)(2)(B)(iii).  At Hearing, Defendant stipulated to receiving these documents alongside Olsen's Expert Report.

---

[3] Defendant argues the Expert Report does not comply with Rule 26(a)(2)(B) for various reasons related to the Expert Report's substance that the Court finds more appropriately addressed under the Federal Rules of Evidence governing expert opinion [Dkt. 41].  Defendant makes four specific arguments about analytical gaps it perceives in Olsen's Expert Report [*see* Dkt. 41 at 7-10].  These arguments relate not to the Expert Report's compliance with Rule 26(a)(2)(B), which prescribes form (procedural) requirements for an expert's report, but instead to Olsen's compliance with the Federal Rules of Evidence, which prescribe substance requirements for expert opinions.  *See, e.g.*, *Amaya v. City of San Antonio*, No. 5:12-CV-00574-DAE, 2014 WL 3919569, at *2 (W.D. Tex. Aug. 11, 2014) ("Expert witness testimony is governed by Federal Rule of Civil Procedure 26(a)(2) in unison with Federal Rule of Evidence 702, 703, and 705. Rule 26(a)(2) outlines the procedural requirements of disclosure, while Rules 702, 703, and 705 address the qualifications of the expert witness and the substance of the testimony.").

Further, the Expert Report uses no uncertain "vague terms" in providing bases for its conclusions: it refers specifically to American Institute of Steel Construction ("AISC") provisional guidelines, Olsen's own experience, and the facts of the instant case (as Olsen understands them) from deposition testimony of certain of Defendant's employees [Dkt. 41, Ex. A]. Although Olsen's Expert Report sets forth the "why and how" of her conclusions in a somewhat jumbled, inarticulate manner, the Court cannot find that the Expert Report lacks explanation of Olsen's rationale. Moreover, the Court finds the information within the Expert Report sufficient to permit Defendant effectively to prepare for cross examination of Olsen at trial and to arrange for testimony by its own expert witnesses in rebuttal. In sum, Olsen's Expert Report complies with Rule 26(a)(2)(B)'s requirements.

### B.     Federal Rule of Evidence 702 (Olsen's Qualifications and Reliability)

#### 1.     Qualifications

As an initial matter, the Court notes the Parties agreed at Hearing that Olsen has the requisite qualifications to opine as to steel detailing document control and project management, and, accordingly, to Plaintiff's performance and the value of that performance. In reviewing Olsen's curriculum vitae, the Court concurs she possesses the necessary qualifications for these two topics; and Plaintiff advised at Hearing that she is proffered as an expert for no other topic. Olsen has extensive experience working within the steel detailing industry, has produced scholarship focused on the document control and project management aspects of the industry, and has provided expert testimony on these topics many times before [*see* Dkt. 44 at 7-10]. The Court finds Olsen bears the requisite qualifications to testify as to Plaintiff's performance under the steel-detailing contract at issue here and the alleged value of that performance.

### 2. Reliability

Reviewing Defendant's briefing [Dkt. 41] and its arguments at Hearing, the Court discerns Defendant makes three main arguments concerning the reliability of Olsen's Expert Report. First, Defendant contends Olsen's Expert Report contains conclusory opinions for which Olsen fails to provide sufficient explanation and support [Dkt. 41 at 7]. Defendant cites Olsen's summary (located on the first page of her report) as an example, asserting it lacks support and/or fails to explain why the documents Olsen reviewed support the conclusions expressed therein [Dkt. 41 at 7]. Second, Defendant asserts Olsen makes factual errors in those few instances she does attempt to connect her conclusions to the facts of the present case. As an example, Defendant claims Olsen assumes on page four of her report that Defendant did not provide Plaintiff certain documents (RFI-001 dated 06/12/2014, ASI-001 dated 06/11/2014, RFI-002 dated 06/10/2014, and ASI-002 dated 06/12/2014) when evidence (namely Dkt. 41, Ex. F) shows to the contrary [Dkt. 41 at 7]. In another example, Defendant argues Olsen assumes on pages four through five of her report that Bid Pack #2 was submitted late. Defendant argues this is incorrect and thus Olsen's conclusion (that starting over would have been the best option) is faulty [Dkt. 41 at 7-8]. Third, Defendant claims Olsen erroneously concludes Defendant caused all of Plaintiff's issues through contract mismanagement because: (a) she determines based on lack of reference to AISC protocols in depositions of certain of Defendant's employees that Defendant did not comply with AISC guidelines (even though Plaintiff never requested a 30(b)(6) corporate representative deposition); (b) she determines based on the depositions of (i) Roenne and (ii) Canda, neither of which were designated as 30(b)(6) depositions, that the "company process for a Quality Management System is broken" [Dkt. 41 at 8].

Plaintiff argues in response that, though Olsen's Expert Report is written in industry jargon and accordingly may be difficult in places to understand, it certainly provides sufficient explanation for its conclusions to pass muster under Rule 702. In particular, Plaintiff claims the summary is just that—a condensed conclusion based upon Olsen's observations made throughout the Expert Report—and that Olsen's placing the summary at the front of the Expert Report does not alter the fact it relies upon the observations Olsen makes later in the document [Dkt. 44]. Plaintiff points to Olsen's references throughout the Expert Report to the documents she reviewed in reaching her conclusions as well as her detailed exposition of the AISC standards she applied to the facts of this case obtained from her review of the underlying documents [Dkt. 44]. At Hearing, Plaintiff further explained Olsen relied upon thousands of documents in reaching her conclusions expressed in the Expert Report and even references some of those documents in the Expert Report [*see also* Dkt. 59 (providing a complete list of the documents Olsen considered in compiling the Expert Report)].

In determining reliability, a court "focuses on the expert's methodology, not the conclusions generated by it." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (citations and internal quotations omitted) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997)). The U.S. Supreme Court has characterized this examination as "flexible" and has given district courts broad discretion in tailoring their expert analysis based on the facts of the case in question. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (providing that courts should consider the factors outlined in *Daubert* for evaluating scientific expert opinion only "where they are reasonable measures of the reliability of expert testimony"). The *Daubert* factors ask (1) "[w]hether a 'theory or technique . . . can be (and has been) tested'"; (2) "[w]hether it 'has been subjected to peer review and publication'"; (3) "[w]hether, in respect to a particular

technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'"; and (4) "[w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho*, 526 U.S. at 149-50 (quoting *Daubert*, 509 U.S. at 592).[4] Courts use such factors to assist in determining whether "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," such that the court may consider the opinions expressed within the report unreliable. *Id.* (internal quotations omitted) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), and citing *Johnson*, 685 F.3d at 460-61). Still, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration" where possible. *Viterbo*, 826 F.2d at 422.

The U.S. Supreme Court developed the *Daubert* factors in a case concerning expert scientific opinion and methodology, but expressly held that courts should approach the reliability determination with flexibility—paying heed to particular type of expert opinion presented for evaluation and the set of facts presented in the case as a whole. *See* 509 U.S. at 594-95. In the present case, Olsen provides opinions relating to the performance and value of a contract in a particular type of industry based on her review of contract documents, industry standards, and her experience. *United States v. Vicknair*, No. CRIM.A.03-16, 2005 WL 1400443, at *5-6 (E.D. La. June 2, 2005) (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)) (noting "[s]ome types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise" and determining expert's consideration of applicable standards and laws in conjunction

---

[4] Neither Party advocates for or against the Court's applying the *Daubert* factors (or any other set of factors) in determining whether Olsen's opinion is reliable.

with the facts of the case and in light of the expert's own experiences a reliable methodology).

Other courts evaluating expert opinions like those presented here have considered the following

factors:

> (1) whether the expert identified the materials relied upon and personally examined the file underlying the case; (2) whether the expert sufficiently explained why he or she reached an opinion; (3) whether the expert cited other sources relied upon by attorneys such as applicable statutes, treatises, or publications by professional organizations; or (4) whether the expert demonstrated that his opinion is accepted by his peers.

*United States v. Gallion*, 257 F.R.D. 141, 149 (E.D. Ky. 2009) (quoting *McDevitt v. Guenther*, 522

F. Supp. 2d 1272, 1291 (D. Haw. 2007)). The Court finds these factors useful guidelines in the

instant case.

In the instant case, the Expert Report does not suffer from too great an analytical gap

between Olsen's opinions and the bases for same to disqualify Olsen from testifying. The Expert

Report begins with reference to those industry standards Olsen believes are relevant and explains

why Olsen believes such standards bear on the present case [*see* Dkt. 41, Ex. A at 3-5].

Specifically, Olsen begins by explaining that steel detailers work under steel fabricators, who in

turn work under a general contractor in construction projects. She notes that, under AISC

guidelines, these entities each work with one another through documents, usually contracts,

providing crucial details for the construction work and "critical paths" each entity must follow so

that the work each entity does at each level of the process comes together cohesively to form a

finished project. Olsen further explains the general contractor usually provides all of these

documents (at least the initial workups) to the steel fabricator(s) and detailer(s) before the project

even begins, in the bidding phase. In the instant case, the Parties (and Olsen) refer to those initial

documents as "Bid Packs," and in this case the Parties exchanged two of them, Bid Pack #1 (dated

June 19, 2014, according to an email between Switzky and Plaintiff) and Bid Pack #2 (dated

September 24, 2016, according to the Expert Report) [*see* Dkt. 41, Ex. A at 4, Ex. F]. Olsen expresses that confusion about the Bid Packs, particularly about documents that Olsen asserts Defendant initially omitted from Bid Pack #2 but later provided, resulted in Plaintiff's alleged delay in complying with Defendant's demands [*see* Dkt. 41, Ex. A at 4-5]. She opines from her review of the documents "that the work was not managed according to the AISC Certification Program requirements" and that, accordingly, Plaintiff rendered performance as best as possible given the confusion [*see* Dkt. 41, Ex. A]. Olsen then goes on to detail specific instances of what she perceives as defective mismanagement and document control on Defendant's part throughout Plaintiff's attempted performance, citing AISC standards and deposition testimony of three of Defendant's employees [Dkt. 41, Ex. A at 6-12].

Reviewing the Expert Report generally, the Court concludes as follows: Olsen references specific industry standards and cites to what she considers relevant portions of the evidence and contracts exchanged between the Parties; Olsen explains the "how and why" of her conclusions by applying those industry standards to specific facts in the case; Olsen notes the referenced AISC standards apply in this case and that she (and others) have applied these standards in similar cases before; and Olsen's publications provided alongside the Expert Report show that, in general, peers accept her opinions about document control and/or project management in the steel detailing industry [*see generally* Dkt. 58, Plaintiff's Ex. 1 at 1-12 (Expert Report), 14-59 & 83-168 (deposition testimony, emails, and contract documents), 175-218 (Olsen's previous publications), 61-79 & 220-279 (industry standards Olsen considers in the Expert Report)]. *Compare Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985) (determining trial court erroneously excluded expert testimony about a product that allegedly caused damage where the expert had extensive experience in the field, "had in fact inspected the design" of the product, as well as "a

set of blueprints of the [product], and viewed photographs showing the condition of the [product] at the time of the accident"), *and Stetson Petroleum Corp. v. Trident Steel Corp.*, No. 4:14-CV-43, 2015 WL 6745958, at *4 (E.D. Tex. Nov. 4, 2015) (finding expert sufficiently reliable where the expert "list[ed] the documents that he reviewed in reaching his conclusion" and "relied on recognized publications and texts when creating his opinion"), *with Lewis v. Par. Of Terrebonne*, 894 F.2d at 146 (rejecting expert testimony where based upon "two meager record citations"), *and Hilt*, 170 F.R.D. at 185 (rejecting expert opinion where the report said only that the expert's opinions "[we]re based upon the education, training, and experience of [the expert] and her reliance on two depositions").

Defendant also asserts Olsen recites erroneous facts in the Expert Report regarding documents she believes were missing from the Bid Packs and the proper method for remedying the alleged untimely delivery of Bid Pack #2. Defendant claims that an email from Switzky to Plaintiff shows Olsen erroneously determined Plaintiff did not receive the entirety of Bid Pack #1 in a timely manner and that Plaintiff's own representations contrary to Olsen's conclusion regarding the appropriate fix for the ongoing issues between the Parties demonstrate that at least part of Olsen's Expert Report contains analytical gaps [Dkt. 41 at 7-8]. The Court finds neither rationale convincing.

Olsen opines in the Expert Report that certain documents, namely "RFI-001 dated 6-12-2014, ASI-001 dated 6-11-2014, RFI-002 dated 6-10-2014, and ASI-002 dated 6-12-2014" may have been omitted from Bid Pack #1 when Plaintiff received it. Specifically, Olsen notes "[i]t is not apparent that these documents were provided to the steel detailer [Plaintiff] at the time of bid or award as they are not listed at the steel detailers [sic] quote" [Dkt. 41, Ex. A at 4]. Defendant asserts an email from Switzky to Plaintiff date July 2, 2014, noting Switzky "[was] attaching the

contract documents and HME scope for your use" and referencing "New Laramie High School—Core Trade Bid Pac 1 (bids 6-19-14).zip (656.5 MB)" [Dkt. 41, Ex. F] shows Olsen's factual statement regarding such documents is erroneous [*see* Dkt. 41 at 7]. The email, however, references Bid Pack #1 only generally—it does not necessarily rebut Olsen's statement that certain documents within the Bid Pack were omitted. Likewise, Olsen claims in the Expert Report that "[the] release of delayed contract documents (ASI #3, BP2) is best remedied by starting over[,]" while Plaintiff indicated in an email to Canda dated October 6, 2014 that, despite the purported late receipt of Bid Pack #2, Plaintiff could deliver under the contract with "137.5 man-hours" for Bid Pack #2 and "160 man-hours" for "Alt #6" [*compare* Dkt. 41, Ex. A at 5, *with* Dkt. 41, Ex. G at 1-2]. In either instance Defendant highlights, competing inferences arise regarding the underlying facts of this case and how best to remedy the purported contract issues; resolving such discrepancies is not the province of the Court, particularly at this stage of the proceedings. *Cf. Pipitone*, 288 F.3d at 250 (noting the trial court's "gatekeeper" function "is not intended to serve as a replacement for the adversary system" and that "[v]igorous cross examination, *presentation of contrary evidence*, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (emphasis added)). Defendant may test Olsen's conclusions and factual determinations through "traditional and appropriate means"—the Court will not entertain such argument at this juncture. *Pipitone*, 288 F.3d at 250; *cf. United States v. Wohlman*, 651 F.3d 878, 885-86 (8th Cir. 2011) (characterizing issues with expert testimony related to the expert's reliance on another witness's "sometimes contradictory" statements as part of the "weight to be accorded" the expert's opinion).

Finally, Defendant vehemently opposes Olsen's reliance on the deposition testimony of Canda, Switzky, and Roenne in reaching conclusions regarding Defendant's overall document

control system and its use in managing the contracts in this case. Defendant challenges these conclusions because Plaintiff noticed none of these depositions as Rule 30(b)(6)—corporate representative—depositions and because Olsen relies upon these deponents individual and collective failures to reference the AISC standards during the depositions notwithstanding that Plaintiff never asked about such standards [Dkt. 41 at 8-9]. Defendant cites no authority for its proposition that an expert may not rely upon a fact witness other than a 30(b)(6) corporate representative in reaching conclusions about a corporate entity's processes or their application in a particular set of circumstances. Further, authority interpreting the deposition rules counsels against restricting a litigant's case against a corporate entity to solely the representations made during a duly-noticed 30(b)(6) deposition. *See, e.g.*, *United States v. One Parcel of Real Estate at 5860 N. Bay Rd., Miami Beach*, 121 F.R.D. 439, 440 (S.D. Fla. 1988) ("In 1970, Rule 30 was broadened by placing the duty to designate the person with the most knowledge of the subject area to be examined on the corporation; however, 'the new procedure does not preclude taking a deposition by any other procedure authorized by the rules. Thus a party who wishes the deposition of a specific officer or agent of a corporation may still obtain it and is not required to allow the corporation to decide for itself whose testimony the other party may have.'"); *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3653516, at *5 (E.D. Tex. May 31, 2016) (finding a 30(b)(6) deposition unnecessary to bind the corporate entity to statements a representative made at deposition noticed under 30(b)(1) where representative's position within the corporation showed the representative could make authoritative representations about the corporation and its position). Defendant relies wholly on the fact that the Plaintiff failed to notice any of Canda, Switzky, and Roenne for 30(b)(6) deposition and makes no argument regarding whether these persons may or may not make representations on behalf of the corporation (or about

the corporation) generally or in the circumstances presented here. Further, Olsen points to representations by Canda, Switzky, and Roenne showing they lack familiarity with "job descriptions," document control," "sub-contracting[,]" and "company process" that, in Olsen's experience, persons in the positions Canda, Switzky, and Roenne occupy should know about [*e.g.*, Dkt. 41, Ex. A at 7]. Olsen's Expert Report connects her conclusion about these representatives and their individual and collective knowledge concerning document control generally and in this case to their deposition testimony. Because litigants in certain circumstances may rely upon non-30(b)(6) deposition testimony in evaluating the actions (or failures) a corporate entity and because Defendant may highlight during cross-examination that Olsen relies upon the deponents' failures to discuss topics at deposition no one apparently asked them about, the Court finds Defendant's argument unpersuasive at this juncture. *See E.E.O.C. v. Caterpillar, Inc.*, No. 03 C 5637, 2004 WL 20920003, at *9 (N.D. Ill. Sept. 14, 2004) (finding plaintiffs' complaint that defendant improperly relied upon plaintiffs' failure to address a topic at deposition "the proper subject of cross-examination and impeachment"); *see also Eldridge v. Gordon Bros. Grp., LLC*, 316 F.R.D. 12, 42 (D. Mass. 2016), *aff'd in part, vacated in part sub nom. Eldridge v. Gordon Bros. Grp., L.L.C.*, No. 12-2311, 2017 WL 2981797 (1st Cir. July 13, 2017) ("[W]hether the lack of supporting documents sufficiently undermines [an expert's] testimony to render it incredible is a question for a finder of fact.").

In sum, Defendant's Motion to Strike the Expert Report [Dkt. 41] should be denied, and Olsen's Expert Report should remain as part of the record. The Court will permit Olsen to testify to Plaintiff's performance under the contracts at issue and as to the value of that performance. The Court denies Defendant's Motion to Strike Expert Report [Dkt. 41] without prejudice.

## II. Olsen's Rebuttal Report

Defendant also moves to strike Olsen's Rebuttal Report [Dkt. 48, Ex. A] through its Motion to Strike the Rebuttal Report [Dkt. 48], arguing that Olsen's Rebuttal Report is conclusory and fails to connect her conclusions to any evidence in support of her opinions, that Olsen fails to employ any methodology in reaching her conclusions, and that Olsen is not qualified to offer certain of the opinions offered in the Rebuttal Report, namely regarding the alleged engineering deficiencies in Plaintiff's product to which two of Defendant's experts (Dan Canda and Brian Aubert) intend to testify [Dkt. 48 at 1-2]. Specifically, Defendant asserts it proffered the following expert reports, and that Olsen attempts improperly to rebut each one: (1) Lyle Charles (a Project Management Professional), (2) Don Grigg (a non-retained expert on Tekla engineering software), (3) Bobbi Fletchall (Defendant's Detailing Manager), (4) Dan Canda and Brian Aubert (each Professional Engineers who work for Defendant), and (5) Kevin Rake (testifying about damages) and John Haas (testifying about scheduling delays).

Initially the Court notes its findings *supra* regarding Olsen's methodology employed in her Expert Report apply equally to Defendant's arguments about the Rebuttal Report. As with the Expert Report, Olsen relies in constructing her Rebuttal Report upon her review of the documents in this case, as well as Defendant's expert witness disclosures [*see* Dkt. 48, Ex. A at 16 (listing documents on which Olsen relied)]. Further, Olsen explains for each expert she attempts to rebut why she reaches an opposing conclusion [*see generally* Dkt. 48, Ex. A at 3-14]. Whether Defendant disagrees with the conclusions Olsen draws from the evidence has no bearing on the methodology Olsen employed in constructing the Rebuttal Report. The Court's "gatekeeper" role requires the Court to scrutinize the *sources* on which an expert relies and the *methods* the expert uses to draw conclusions from those sources—this does not give the Court authority to question

the *premises* on which the expert bases her conclusions, so long as the expert draws those premises from reliable sources. Litigants bear the burden of showing the factfinder an expert has misinterpreted (or warped) a factual premise and has reached thereby an untenable or unmerited conclusion. Moreover, to the extent Defendant argues the Rule 26(a)(2)(B) standard governs Olsen's Rebuttal Report and that it fails to meet that standard [*see* Dkt. 48 at 5-7], Defendant errs. The Court found *supra* that Olsen's Expert Report complies with Rule 26(a)(2)(B), and where an expert serves both to support a litigant's case-in-chief as well as in a rebuttal capacity, courts must read the expert's rebuttal expert report alongside and in light of the initial expert report. *Sills v. Enprotech Corp.*, No. 3:05CV32-B-A, 2006 WL 5157684, at *1 (N.D. Miss. June 27, 2006).

Accordingly, the Court turns to consider Defendant's objections regarding Olsen's rebuttals to each of Defendant's experts.

### A. *Charles Rebuttal*

Defendant proffers retained expert Lyle Charles's testimony in support of its case-in-chief. Defendant asserts Charles explains the AISC protocols and thoroughly explains how Plaintiff failed to meet Defendant's requirements under the contracts through eleven distinct examples and explanations [Dkt. 55, Ex. A]. Defendant argues against Olsen's Rebuttal Report, which addresses each of the eleven examples with what Defendant argues are conclusory and/or speculative factual allegations, rather than supported expert opinion [Dkt. 48 at 8-14]. In each instance, Defendant essentially objects that Olsen considered certain evidence or standards Defendant considers irrelevant or inapplicable or else that Olsen failed to consider other evidence or standards Defendant consider highly relevant or singularly applicable. Indeed, Olsen's rebuttal to Charles's report often cites and discusses different documents than does Charles's and provides contrary interpretations of applicable industry standards [*compare* Dkt. 48, Ex. A at 3-8, *with* Dkt. 55]. In

so doing, Olsen's Rebuttal Report explains why she believes Charles's conclusions are erroneous and makes reference either to the facts of the case (as she understands them from her review of the documents provided to her) or to industry standards and her own experiences [Dkt. 48, Ex. A at 3-8]. This type of dispute "goes to the weight of the evidence" as interpreted by the opposing experts, "not admissibility." *See, e.g.*, *Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 7665773, at *4 (E.D. Tex. July 19, 2016) ("Medtronic's dispute on this point is merely that Dr. Yassir did not rely on the facts that Medtronic believes are the most important. Failure to consider medical reports or speak to Dr. Barry goes to the weight of the evidence, not admissibility."). Accordingly, the Court finds Olsen's rebuttal to Charles's opinion admissible.[5]

### B.    *Grigg Rebuttal*

Defendant proffers non-retained expert Don Grigg's testimony on Tekla engineering software licensing in support of its case-in-chief. Grigg apparently seeks to testify to software licensing because Defendant claims Plaintiff sub-contracted his work under the contracts here in issue impermissibly to a Filipino firm employing pirated Tekla software. Defendant argues Olsen's Rebuttal Report, which baldly states "[s]oftware licensing is not relevant to the issues being discussed in this case[,]" attempts to determine relevancy, a question for the Court [Dkt. 48 at 14].

---

[5] The Court notes the Parties also disagree concerning the importance of Bid Pack #2 to the outcome of this case. Plaintiff contends (as does Olsen) that Bid Pack #2 significantly impacts the case because its late arrival created much of the confusion to which Plaintiff seeks to attribute any alleged delays or errors on his part in performing the underlying contracts [*e.g.*, Dkt. 51 at 8]. Defendant claims to the contrary that "Plaintiff's focus on Bid Pack 2 in Plaintiff's Response and Olsen's initial and rebuttal reports is of no moment because [Plaintiff] was never instructed to start work on Bid Pack 2; and indeed was specifically instructed to not start work on Bid Pack 2" [*e.g.*, Dkt. 52 at 3]. In other words, the Parties disagree about whether Bid Pack #2 had any impact on Plaintiff's contractual obligations. Accordingly, Defendant's argument that Bid Pack #2 is irrelevant must fail, as the question of whether Plaintiff substantially performed under the contract necessarily turns on the extent of Plaintiff's contractual obligations, including whether Bid Pack #2 changed those obligations.

The Court agrees with Defendant. Experts may not offer testimony that purports to determine what law governs a case or what the applicable law means—only the Court has authority to make such determinations. *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("An expert may never render conclusions of law."). The Fifth Circuit has held an expert's "opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Askanase v. Fatjo*, 130 F.3d 657,673 (5th Cir. 1997) ("There is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokes[person] of the law, who of course is the judge."). Olsen's statement—the only statement she makes regarding Grigg's opinion—reads "[s]oftware licensing is not relevant to the issues being discussed in this case" [Dkt. 48, Ex. A at 9]. Olsen steps out of the role of an expert with this opinion and improperly into that of the Court. Accordingly, the Court strikes Olsen's rebuttal to Grigg's opinion.

## C. *Fletchall Rebuttal*

Defendant proffers non-retained expert Bobbi Fletchall (Defendant's Detailing Manager) to opine that the most recent model of the Laramie High School project provided by Plaintiff to Defendant contains so many errors that the model provides Defendant no value [*see* Dkt. 55, Ex. C]. Defendant argues that Fletchall cites specific criteria in support of her conclusion, while Olsen's Rebuttal Report fails to provide any basis for rebutting Fletchall's opinions [Dkt. 48 at 15]. To the contrary, Olsen's Rebuttal Report articulates various reasons Olsen disputes Fletchall's analysis. In particular, Olsen opines the intervening submission of Bid Pack #2 renders much of Fletchall's analysis outdated, as it is based on Plaintiff's failure to meet deadlines and requirements included in Bid Pack #1 [*see* Dkt. 48, Ex. A at 8-9 (focusing on "the revised drawings contained

in Bid Pack 2" and Fletchall's failure to reference those revisions)].  Again, disputes between experts regarding which documents, facts, and standards should control the outcome of the overall case are properly resolved at later stages of litigation and do not bear on admissibility of an expert's testimony.  *See, e.g.*, *Barry*, 2016 WL 7665773, at \*4.  The Court accordingly finds Olsen's rebuttal to Fletchall's opinion admissible.

### D.    *Canda and Aubert Rebuttal*

Defendant proffers the testimony of non-retained experts Dan Canda and Brian Aubert (Professional Engineers employed by Defendant) in support of its case-in-chief.  Canda provides in a sixty-six page report his "engineering analysis of a selection of connections which were found to be deficient as released to fabrication by Glen Ihde and Company" alongside detailed depictions of the steel fabrications at issue [Dkt. 55, Exh. D].  Aubert provides an opinion based upon Canda's report and Aubert's own review of Plaintiff's work that Plaintiff's "detailing contained significant quantities of negligent errors" that Defendant could not accept [Dkt. 55, Exh. E].  Defendant argues Olsen is not qualified to rebut Canda's and Aubert's opinions as she is not an engineer [Dkt. 48 at 15].  Plaintiff argues in response that Olsen "is <u>not</u> providing engineering opinions" and instead opines "that (1) [Plaintiff] was not charged with providing any connection design calculations . . . and (2) the engineering data referenced is not relevant to an analysis of the working construction documents" [Dkt. 51 at 10].

As noted *supra* at note 5, Olsen bases many of her opinions regarding Plaintiff's performance under the contracts on Bid Pack #2's existence and the time at which it entered the pool of contractual documents here in issue [*see, e.g.*, Dkt. 48, Ex. A at 10-11].  Her Rebuttal Report attempts to rebut Canda's and Aubert's opinions mainly on the basis that Bid Pack #2 changed the expectations Defendant had for Plaintiff and, as such, invalidated the data on which

Canda and Aubert rely in characterizing Plaintiff's performance as deficient [Dkt. 48, Ex. A at 9-10]. Olsen also argues Plaintiff had no obligation to provide "connection design calculations" under the contract—as read in context, in light of her experience, and under the relevant industry standards—such that each of Canda's and Aubert's opinions about Plaintiff's failure to provide sufficient "connections" work need not be afforded much, if any consideration [Dkt. 48, Ex. A at 9-10]. As to these opinions, the Court finds Olsen's rebuttal admissible.

Olsen also opines more generically that she "disagree[s] that the steel detailing work performed by [Plaintiff] was in any way deficient regarding connections" [Dkt. 48, Ex. A at 9-10]. Plaintiff argues this conclusion relates to Olsen's opinions regarding the timing of Bid Pack #2 and Defendant's purported failure to charge Plaintiff with the task of completing any connections work [Dkt. 51 at 10]. To the extent Olsen attempts to opine as to Canda's and/or Aubert's engineering opinions, however, the Court finds Olsen unqualified. The record currently before the Court demonstrates that Olsen has years of experience in and has written extensively about the document control and project management aspects of steel detailing. It does not reveal any level of expertise in or experience with the engineering aspects of steel detailing. Accordingly, the Court finds that Olsen's Rebuttal Report is admissible as to Canda's and Aubert's opinions, but only to the extent Olsen opines that Bid Pack #2 changed the expectations Defendant had for Plaintiff and, as such, invalidated the data on which Canda and Aubert rely in characterizing Plaintiff's performance as deficient.

### E.    *Rake and Haas Rebuttal*

Defendant lastly proffers the expert testimony of Kevin Rake (Defendant's CFO) and John Haas (Defendant's CEO) in support of its case-in-chief. Rake offers testimony about Plaintiff's claimed damages while Haas offers testimony about the ramifications of Plaintiff's alleged

detailing errors on Defendant's business.  With regard to Olsen's rebuttal to Rake's opinion, Defendant argues that "Olsen is not qualified to opine regarding [Defendant's] alleged damages" but provides no explanation for this assertion [Dkt. 48 at 15].  With regard to Olsen's rebuttal to Haas's opinion, Defendant reiterates its argument that Olsen's rebuttal speculates and concludes without any basis or method [Dkt. 48 at 16].

Olsen's rebuttal to Rake's opinions (regarding damages) relies upon her determination that Defendant's own mismanagement of the contract led to Defendant's losses, if any, rather than Plaintiff's allegedly deficient performance [Dkt. 48, Exh. A at 11]. Olsen's rebuttal to Haas's opinions (regarding the ramifications of Plaintiff's alleged detailing errors) also relies upon her determination that Defendant's own mismanagement of the contract led to Defendant's scheduling adjustments, rather than Plaintiff's allegedly deficient performance [Dkt. 48, Exh. A at 11].  Olsen clearly does not contest Rake's methods or calculations but instead attacks Rake's underlying premise—i.e., that Plaintiff's actions resulted in any damages at all, much less those Rake calculates.  Like the Court has indicated *supra*, Olsen provides sufficient support for her conclusions that Defendant's actions, rather than Plaintiff's alleged failures, resulted in the instant dispute and related issues.  Accordingly, the Court finds Olsen's rebuttal of Rake's and Haas's opinions admissible.

Though the Court takes no position on whether Olsen's opinions ultimately will persuade the factfinder that Plaintiff should prevail, the Court need only ask at this stage (1) whether Olsen's Reports provide Defendant enough information to understand and rebut Olsen's opinions and (2) whether Olsen provides sufficiently reliable and relevant information based upon her qualifications.  Excepting Olsen's conclusions about the relevance of Grigg's testimony or about

Canda's and Aubert's engineering opinions (to the extent she reaches any), the Court finds Olsen's Expert Report and her Rebuttal Report admissible.

## CONCLUSION

For the foregoing reasons, the Court finds Defendant's Motion to Strike and Exclude Expert Testimony of Kerri Olsen [Dkt. 41] should be denied and that Defendant's Motion to Strike and Exclude Rebuttal Testimony of Kerri Olsen [Dkt. 48] should be granted in part and denied in part. Olsen's Rebuttal Report is stricken to the extent it concludes the testimony of Don Grigg is irrelevant and to the extent it purports to rebut the underlying engineering analysis of Dan Canda and/or Brian Aubert. In all other respects, the Court finds Olsen's Rebuttal Report admissible. Accordingly,

It is therefore **ORDERED** that Defendant's Motion to Strike and Exclude Expert Testimony of Kerri Olsen [Dkt. 41] is hereby **DENIED**, and that Defendant's Motion to Strike and Exclude Rebuttal Testimony of Kerri Olsen [Dkt. 48] is hereby **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

**SIGNED this 1st day of August, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE